Myers *v.* Eddy.

———————

MICHAEL J. MYERS, executor, &c. *vs.* WILLIAM S. EDDY, and others.

The real estate is not charged with the payment of legacies, unless the intention of the testator to that effect is expressly declared, or clearly to be inferred from the language and dispositions of the will.

In collecting the intention of the testator, courts are bound by precedent and authorities in point; and upon identity of language, they are rather to be bound by settled judicial authority, than to allow conjectural interpretation to usurp the place of judicial exposition.

The intent of the testator, *only* in cases of latent *ambiguity*, must be ascertained from the circumstances under which the will was made—the state of the testator's property—the amount to be devised or bequeathed—the number of his family to whom it was to be distributed, and the .like; but all these circumstances are to be connected with the express and positive words of the devise; and such extrinsic evidence is not admissible to alter, detract from, or add to, the terms of the will itself.

Yet if the extrinsic circumstances show that the personal estate exceeds the real, in amount, and that to charge the payment of the legacies upon the real estate would produce inequality and injustice among the persons having equal claims upon the testator's bounty, they will afford the strongest evidence that it was not his intention to charge the land with the payment of the legacies.

In order to charge the real estate with the payment of legacies, there must be something, either in the terms of the will itself, or in the proof of extrinsic circumstances, in addition to the usual formula of the residuary clause, by which the intention is expressly declared, or from which it may be clearly and satisfactorily inferred.

*Unaided* and *alone*, the words "all the rest and residue of my real and personal estate not before disposed of," are insufficient for that purpose; the *ordinary* meaning of those words being nothing more than that the testator does not mean to die intestate, as to any portion of his estate.

A testator gave and devised to his three grand children, E. J. and W., the children of a deceased daughter, the sum of $2800, to be equally divided between them, and the survivor or survivors of them, when they, or any of them, should attain the age of twenty-one years, or were married; the same to be on interest at five per cent, until it should be paid by his executor. He then devised as follows: "I give and devise to my daughter Martha, and her children, and her and their heirs, all the rest and residue of my property, real and personal, except my gold watch," &c. *Held* that the legacies given to E. J. and W. were not a charge upon the real estate owned by the testator at the time of his death, and devised by the will to his daughter Martha and her children.

The cases of *Lupton* v. *Lupton*, (2 *John. Ch.* 614;) and *Harris* v. *Fly*, (7 *Paige*, 421,) approved, and held to establish the true rule in such cases.

THIS action was commenced in December, 1858, for the purpose of obtaining a judicial construction of the will of Jesse L. Billings, deceased, and for settling the account of the plaintiff, as executor.

The will, except the formal part, and portions not necessary to be stated, is as follows:

"*First.* I give and devise to my three grand children, Elizabeth, John and William, the children of my dear

daughter, late wife of John H. Boyd, Esq. of Whitehall, the sum of $2800, to be equally divided between them, and the survivor or survivors of them, when they or any of them shall attain the age of twenty-one years, or are married ; the said sum of $2800 to be on interest at five per cent, from my decease, and until the same shall be paid by my executor hereinafter named.

*Secondly.* I give and devise to my daughter Martha and her children, and her and their heirs, all the rest and residue of my property, real and personal, except my gold watch, which I devise to my grandson, John W. Boyd ; my gold watch and my history of England to be delivered him at my decease, and in case of his death, then to my grandson William.

And I do hereby appoint Michael J. Myers executor of this my last will and testament, and trustee of my three grand children, Elizabeth, John and William aforesaid."

The court ordered a reference, to take an account, which was taken, setting forth the condition and value of real and personal property, separately, and the condition of the fund in the plaintiff's hands. The testator left, him surviving, his daughter, Martha Eddy, and the three Boyds, children of a deceased daughter, as his only heirs at law, and died in 1847.

The court, upon hearing the case, held : *First.* That the legacies given by the will to the defendants, Boyds, were a charge upon the real estate owned by the testator at the time of his death. The other findings it is not material to notice.

To the first finding there was an exception. The remaining facts sufficiently appear in the opinion.

*J. H. Boyd,* for the plaintiff.

*C. S. Lester,* for the defendants, Eddy and others.

*By the Court,* ·POTTER, J. I am not able to agree with the learned judge, in the first finding, that the legacies given

by the will are a charge upon the real estate; though there is authority in the books to sustain such a conclusion. There is some apparent conflict of authority, in the English cases, upon this point. This apparent conflict seems to be acknowledged by the learned judge in this case; and he therefore adopts as his guide, as he says, that rule of universal control in such cases, that the intent of the testator is to govern. I acknowledge and adopt this, also, as the true criterion. The intent of the testator, in such cases, however, *only* in cases of latent *ambiguity*, must be ascertained from the circumstances under which the will is made, the state of the testator's property, the amount to be devised or bequeathed, the number of his family to whom it is to be distributed, and the like; but all these circumstances are to be connected with the express and positive words of the devise; and such extrinsic evidence is not admissible to alter, detract from, or add to, the terms of the will itself. (2 *Jarm. on Wills,* 742.) Nor can extrinsic circumstances be allowed to take the place of, or change, well settled judicial exposition or construction of the *same* language in other cases. (*Wigram on Ambiguities,* 75.) So too, when extrinsic circumstances are to be resorted to, in order to aid in giving construction, they are to have reference to such circumstances as existed at the date of making the will, and not to those posterior, or to such as may exist at the time of construing it. (1 *Jarman,* 365.) While, therefore, I agree with the learned justice that it is true that the intention of the testator is to govern, and that intent, when ascertained, is "the law of the instrument," it is equally true, as well as the settled law, that the court is bound by precedent and authorities in point; and that upon identity of language, we are rather to be bound by settled judicial authority, in collecting the intention of the testator, than to allow conjectural interpretation to usurp the place of judicial exposition. (*Wigram on Ambiguities,* 75. 2 *Jarman,* 739.) In the

one case we shall secure uniformity of the law ; in the other it would be an impossibility.

Testing this case by such rules, and construing the will by the light of our own judicial authority in this country, and in this state, I am unable to distinguish it from the cases cited in the decision of *Reynolds* v. *Reynolds'. ex'rs*, decided by the unanimous opinion of the Court of Appeals in 16 *N. Y. Rep.* 127. In that case the will directed the testator's just debts and funeral expenses to be paid by his executors ; gave several legacies to his children, without directing how or by whom they should be paid, and without charging them upon any particular fund ; "which several legacies or sums of money *I will and order shall be paid to the legatees* within one year after my decease ;" and after specific legacies of personal property, the testator says : "and seventhly and lastly, I give, devise and bequeath to my sons Alvah Reynolds and George Reynolds, and to their heirs, all and singular, my real and personal estate of what nature and kind soever, to be equally divided between them ;" and then appointed his said two sons his executors. The personal estate was in this case insufficient to pay one of the legacies. It was held it should abate in proportion, and that no part could be charged on the real estate. The difference in these cases is, that in the last clause of the will, in the case before us, the words "all the rest and residue of my real and personal property" is contained, which is quite important. But it must also be remembered that the testator does not require the legacies "*first to be paid ;*" nor use the words *rest and residue* "after *payment of the legacies.*" If the intent exists, or is to be inferred, or implied, it had no other support than the use of the words "*all the rest and residue of my property, real and personal.*" And this is the ground, and the only ground, as I read the opinion of the learned judge, upon which he *implies that intent ;* and the authorities cited in point are *Lewis* v. *Darling*, (16 *How. U. S. R.* 1,) and the cases there cited. In looking at that case, I do not think that, of itself, it sus-

tains the views taken by the learned judge; for although Justice Wayne, who delivered the opinion in that case, holds that the payment of debts and legacies of the testator was a charge upon the real estate devised in the residuary clause, yet he says: "the general rule is otherwise," and that *that* case is an exception to the general rule, and the exception is based on the reason that the rest and residue of the testator's estate was a blending together of both real and personal estate, not merely and alone by the use of the words "rest and residue of my real and personal estate," but by an express provision of the will, that real and personal estate were to be so blended ; so that the general rule, that the personal estate is the primary fund to pay debts and legacies, could not apply. But as the provisions of the whole will are not set forth, in that case, it furnishes but a poor guide from which to extract a principle. I have not had access to all the authorities cited in the above case to support the principle laid down by the learned judge, in the case. Those I have examined are only exceptions to the general rule, and are cited, as I understand them, mostly as exceptions. In the case of *Brudenell* v. *Boughton*, (2 *Atkyns*, 268,) the testator, after giving certain legacies, without naming from what fund they were to be paid, says : "Lastly, I give the remainder of my estate, and all my freehold and personal estate whatsoever, not herein otherwise disposed of, *after the payment of my just debts, and legacies* to my brother, whom I also appoint my executor," &c. I find no difficulty in seeing that the next residue, *after the payment* of debts and legacies, makes this also an exception. Lord Hardwick held this to create a charge on land — so in *Edgell* v. *Haywood*, (3 *Atkyns*, 352,) the testator, after directing the payment of various legacies, "to be paid by my executor," concluded his will as follows: "Also, I give, devise and bequeath unto Thomas Haywood and his heirs forever, whom I hereby make, ordain and constitute my only whole and sole executor, all my goods, lands and chattels, *except what is herein before given.*" Lord Hardwick held this was precisely, in effect, as if he had

directed the legacies to be paid by Thomas Haywood, and held the lands devised to him liable to the charge of the legacies. Here it is seen that Thomas Haywood, the devisee, was to pay the legacies.

In the case of *Kidney* v. *Coussmaker* (1 *Ves. Jun.* 436,) the devise was : " All the rest, residue and surplus of my personal estate, *after payment of my debts,* funeral charges, the expenses of proving this my will, monument and legacies aforesaid, in trust," &c. and then directed that until his real estate, therein described, be sold, the rents and profits thereof be applied, the same as his residuary personal estate. Lord Thurlow said, if the testator had given Black acre, " *after paying debts,*" that is the same as saying subject to debts ; and when a testator combines real with personal generally, the real is subject, with the personal, to the burthens of the personal.   This last rule is also subject to exceptions, as appears by one of the cases referred to as sustaining the principle laid down by the learned judge in the case before us.   In the case of *Adams* v. *Brackett,* (5 *Metc.* 280,) the testator devised to his wife, first, specifically, certain parcels of real estate, then all his personal estate at the time of his decease, " *after payment* is made therefrom of my just debts, funeral charges and necessary expenses." The other part of his real estate he left to be divided as the law directs. The personal estate was insufficient to pay debts. The court held that though the personal property was primarily liable to pay debts, and the real and personal were blended together, still that the undevised real property, next to the personal estate, rather than the real estate specifically devised to the wife, should be first charged with the payment of debts. I can see no reason why this case is cited, but that it is one of exception to a general rule. From notes and extracts from some other of the cited cases that I have seen, they seem to have turned upon the fact that the residuary devise was to the executor, who was directed to *pay the legacies,* and others upon *other* language contained in the will, in addition to

"rest and residue," from which the intent of the testator might be implied. Though in some of the English cases, the wills were substantially in the form of the one we are considering, a much larger number of better considered cases in the English courts are the other way. There is also a special term case, (*Tracy* v. *Tracy*, 15 *Barb.* 503,) which in its features is like this, and in which the judge (Mason) held the same rule. I think the case can not be sustained as law. It seems to me that the decided weight of American, as well as of New York authority, is otherwise. I mean by *otherwise*, that the rule requires that there must be some thing, either in the terms of the will itself, or in the proof of extrinsic circumstances, in addition to the usual formula of the common residuary clause, contained in almost every will that is made, from which the intention must be expressly declared, or clearly and satisfactorily inferred, in order to charge the real estate with the payment of legacies ; and that, *unaided and alone*, the words "all the rest and residue of my real and personal estate not before disposed of," are 'insufficient for that purpose ; that the *ordinary* meaning of these words is nothing more than that the testator does not mean to die intestate, as to any of his estate. (2 *John. Ch.* 263.)

The case of *Lupton* v. *Lupton*, (2 *John. Ch.* 614,) was certainly fully and well considered by Chancellor Kent, after a full and able argument by distinguished counsel. The rule in that case was held as I hold to be the rule still. The residuary clause in the will in that case was identical with this ; and because the intention of the testator did not otherwise appear than from such language, the real estate was not charged with the payment of legacies, and was held not to be liable. I see no good reason for overruling this case. It is exactly in point ; it has been, ever since recognized ; and has ever been quoted as good authority ; and, so far as I am informed, has been adopted in all the modern cases in this state. It is held, however, in this case, that if the words "*after payment of debts and legacies*" had been added, this would

Myers v. Eddy.

have been sufficient to charge the real estate ; and that the usual clause, without these words, is insufficient. (*Id.* 623.) This I regard to be the controlling distinction.

In the case of *Harris* v. *Fly,* (7 *Paige,* 421,) decided by Chancellor Walworth, in 1839, the residuary clause did contain the additional words, "after payment of all my debts, legacies and funeral expenses, and other charges and deductions as aforesaid ;" and the real estate was therefore properly held charged. But the chancellor also held this language : "The personal estate is the primary fund for the payment of debts and legacies. If the testator, therefore, gives a legacy without specifying who shall pay it, or out of what fund it shall be paid, the legal presumption is that he intended it should be paid out of his personal estate *only,* and if that is not sufficient, the legacy fails. So if he directs his executors to pay a legacy, without giving to them any other fund than the personal estate out of which they can pay it. But if the real estate is devised to the person who, by the will, is directed to pay the legacy, it has frequently been decided that such legacy is an equitable charge upon the real estate so devised, although the devisee is also the executor, or is the residuary legatee of the personal estate ; unless there is something in the will itself to indicate a contrary intention on the part of the testator." This is exactly the doctrine that should, I think, control this case. I understand the case of *Reynolds* v. *Reynolds,* (*supra,*) adopts the cases from our court of chancery, above cited, with approbation ; and the opinion of Johnson, J. in that case, I understand as saying that any thing different from this would be introducing a new rule. He cites the above cases in chancery as laying down the true rule, and cites also *Roper on Legacies,* 671, (*Am. ed.* 1848,) which is to the same effect.

In the case of *Gridley* v. *Andrews,* (8 *Conn. Rep.* 5,) the residuary clause was identical with this, and the action was to determine the same question. Bissell, J. says, in delivering the opinion of the court : "There is no clause in

the will from which the intent to charge the legacies can be even remotely inferred, excepting that in which the testator devises "the rest and residue of his estate." From this clause it has been contended that such intent is irresistibly to be inferred. "The consequence of such a construction would be, that in every case where pecuniary legacies are given by a will containing a residuary clause, such legacies are of course chargeable on the lands devised. Such a construction, I hardly need say, would directly contravene the whole course of decisions on this subject." He cites the authorities in this state above. He concedes the rule has been otherwise held in Great Britain. A much larger number of English cases, however, are found holding to the doctrine as we claim it to be, than otherwise; though it is conceded, as before stated, that there is much conflict in the English cases. (*But see Keeling* v. *Brown,* 5 *Ves. Jr.* 361, *per Lord Rosslyn ; Kightley* v. *Kightley,* 2 *Ves.* 328, *and cases cited therein, and Roper on Legacies,* 6.) The cases so collected are to the same effect as *Lupton* v. *Lupton.*

The learned judge at special term, reasons upon the language of the residuary clause thus : "There can be (he says) no rest, residue and remainder until some part has first been taken. Reading the residuary clause of the will, distributively, and rendering to each kind of property its own words, would not defeat the charge, unless we deprived the words of their ordinary meaning. This clause reads thus : 'I give and devise to my daughter Martha, &c. all the rest and residue of my property, real and personal, except my gold watch,' &c., and read distributively, *reddendo singula singulis,* it would read thus : 'All the rest of my personal property I give to my daughter Martha, and all the residue of my real estate I devise to my daughter Martha.' Thus read, *the necessary implication follows,* that the testator intended the legacies to be a charge upon, and to come out of, the real estate." Legacies *alone* had previously been given, and only regarding them as being taken out of the

real estate, could there be a residue of the real estate? It appears to me that this argument is not quite sound; at all events it is in conflict with other authority, as we shall see.

In the case of *Wright* v. *Denn,* (10 *Wheat.* 81,) Justice Story, in delivering the opinion, reads the residuary clause differently. First, however, we may say, he gives the same construction to their effect that we have given them in this. In that case legacies were given without designating the source from which to pay them; no personal estate was bequeathed; the real estate was devised as "all the rest of my lands and tenements," &c. He says: "It is not a sound interpretation of a will, to construe charges which ordinarily belong to the personalty, to be charges on the realty, simply because the original fund is insufficient. The charge must be created by the words of the will. Now from what words are we to infer such a charge, in this case? It is said, from the words 'all the rest,' &c. But all the rest of what? Can they be supposed to import all the rest of my lands, &c. after payment of the legacies, and so be a charge on them? This would certainly be going much further than the words themselves authorize, and much further than any preceding clause requires, or justifies. A charge of legacies on land *would not be a devise of real estate,* in the ordinary understanding of men, nor in the contemplation of law." "But it is sufficient (he says) for us to declare that we can not make these legacies a charge on the land, except by going beyond, and not following, the language of the will." Although he admits it may be implied from other language. Judge Story then cites *Murkant* v. *Twisden,* (*Gilbert's Eq. Rep.* 30,) which, he says, was a still stronger case, but the real estate was not bound; for (he says) "*the testator had not in the preceding part of his will devised any real estate; there could be no residue, upon which the clause could operate.*" If there is any force in this remark, it applies to the case before us. The testator had not before devised any real estate. How then could there be a *residue* of real estate?

VOL. XLVII.     18

Judge Willard, in his excellent work on *Executors, &c.* (*p.* 392,) lays down the same rule: "That the usual residuary clause in a will, as, 'I give all the rest and residue of my estate real, and personal, not before devised,' is not sufficient to charge the real estate;" that it is inserted to prevent intestacy; and he adds, in a note, that the reasons upon which Judge Mason bases his decision in *Tracy* v. *Tracy,* (15 *Barb.* 503,) can not be supported; and says it was disapproved in *Reynolds* v. *Reynolds,* (*supra.*)

I have based my dissent from the opinion of the learned judge, upon the ground that the usual residuary clause was a mere formula, and therefore that no intent can be implied from that clause, unsupported by other clauses in the will showing that intent, and that, unaided by extrinsic circumstances, it could not be implied. The weight of authority, I have attempted to show, sustains my position. If I am right, then the construction upon this point, given at the special term, should be modified.

But it seems to me that there is the strongest evidence, in the extrinsic circumstances which surround this case, to come to the very opposite conclusion from that adopted at the special term. The testator had but two children, both daughters. One had died, leaving issue — three children; (his wife being dead.) The surviving daughter was the only link that directly bound him to earthly relationships. There is no evidence that he had, by advances, favored the one family more than the other. It would be almost unnatural to suppose that, in the exercise of an equal fatherly affection, he would intend to disinherit his only child, and to bestow his whole estate upon his grand children. Such an inequality is hardly to be presumed. But we need not stop at this injustice of inequality, alone. Looking at the testator's condition and estate, at the time he made this will, his personal estate was decidedly larger than his real, in amount; and even now, after his death, after deducting all debts, it amounted to $3,018.07; and to this perhaps we might add $2500, now

Myers *v.* Eddy.

worthless, but which, at the time he made his will, he might have estimated to be good. Whereas the real estate is of the value of but $2200. Should there be no charge upon this, this daughter still receives far less than the representatives of the deceased daughter. There is no natural equity in this unequal distribution, and no reason for supposing the testator contemplated injustice between the equal heirs of his body and blood. Upon the other hand, it is the most natural conclusion of the mind, looking at the character and equal division of the testator's estate, at the time of making his will, and seeing the personal estate to be predominate, that by giving $2800 to his grand children, which must of course, and by law, be paid out of the personal, the remainder of the personal, together with the real, would make an equal division to each branch. The residuary clause, in this view, if it can be used for any purpose other than we have assigned to it, gives force to this evidence of intent; for by its language it can be made to mean the very opposite of what is claimed for it, and the testator not only shows that he intends to give Martha his *real* estate, but the residue of his personal. Believing this to have been the testator's meaning, from the extrinsic circumstances, I think the decree should be modified.

Let the decree be modified to meet these views.

[St. Lawrence General Term, October 2, 1866. *James, Rosekrans, Potter* and *Bockes,* Justices.]