NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—DECEMBER,
1876.

## FOSDICK v. DELAFIELD.

### *In the matter of the Estate of* SUSAN M. PARISH, *deceased.*

In determining whether the will effectively appoints a person named as
executor, the intention of the testator must be discovered from the
words of the will, if plain and obvious, and not from extraneous cir-
cumstances; and the court must proceed upon known principles and
established rules, not on loose conjectural interpretation, nor by
considering what a man may be imagined to do in the testator's cir-
cumstances.

Where the words of the will are plain, the intent always follows. The
will cannot be added to nor its omissions supplied.

The court cannot give effect to the will contrary to the plain and obvious
import of the terms used, upon mere conjecture as to testator's inten-
tions, nor upon suspicion that he did not understand the terms
used, even though adopting the plain and obvious import will defeat
the provisions.

Where the testator has used plain and proper language to express his in-
tention, and there are no ambiguities, nor any other provisions of the
will inconsistent with the language used, the court cannot look
outside of the terms of the will for the expression of the testator's in-
tention. Much less can the court assume to conjecture what he
intended, independent of the language, or base a construction upon
its notion of what ought to have been his intention.

The will, after naming two brothers of the testatrix as executors, added,
" and in case both of my said brothers herein lastly above named
shall depart this life prior to my decease, or in case they shall both
decline to act as such executors, then I hereby nominate and ap-
point,"—here naming a son of each of the brothers. Both brothers
survived the testatrix. One declined to act. The other qualified as
executor, and both subsequently died.

*Held,* that there being nothing in the will to evince a controlling in-
tention to keep the administration in the family, the court could not,
on extrinsic evidence that both testatrix's brothers were advanced in
age at the time the will was made, disregard the words " prior to my
decease," and grant letters to a son of one of the brothers. Such
words constitute a condition.

An executor of an executor has no interest in the estate of the testator of
the first executor, nor any control over its administration.

The fact that, on the death of the executor of a former estate, trust funds of that estate have come to the hands of his executors, does not give them an interest in the question as to who is entitled to receive new letters on the former estate, or to petition for a revocation of new letters because issued to one not entitled to receive them.

THIS was an application to revoke the letters testamentary granted to Lewis L. Delafield, on the will of Susan M. Parish.

The petition was by Charles B. Fosdick, William H. Marvin, and Annie Frances Emmett, formerly Annie Frances Monson. It alleged that about the 18th day of September, 1861, letters testamentary were issued to Henry Delafield, now deceased, who qualified and entered upon his duties as executor and continued so to act until his death, February 15th, 1875, when he was the sole executor of the estate; that he left a will which was admitted to probate March 1st, 1875, by which he appointed the petitioners and one Maturin L. Delafield executors thereof, who qualified and received letters testamentary on the same day; that at the death of Henry Delafield, a certain trust fund created by the will of the testatrix, Susan M. Parish, was left in his hands, whereby the testatrix bequeathed to her executors $3,333, in trust to invest on bond and mortgage, &c., to pay the interest and income to Edith Delafield, wife of John Delafield, during her life, and upon her death to divide the principal among her children surviving her, share and share alike; that this trust fund had come into the hands of the last named executors of Henry Delafield. That in addition thereto there was, at his death, another trust fund in his hands, set apart by will of the testatrix, in favor of one Mrs. Monson, and that by an order of the Supreme Court the petitioners Marvin and Emmett were appointed trustees instead of Henry Delafield, deceased; and that the petitioner and said Maturin L.

Delafield had accounted to the last mentioned trustees for the trust fund last mentioned, and paid it over to them; that after the death of Henry Delafield, and in October, 1875, Lewis L. Delafield applied *ex parte* to Surrogate HUTCHINGS for letters testamentary upon the estate of the testatrix, claiming to be named as such in her will and trustee thereunder; but petitioners alleged that he was not so named; that on the day last mentioned, the Surrogate issued letters to him, and that a written opinion of said Surrogate HUTCHINGS, given upon granting the application, stated that the question raised was not free from doubt, and that letters would be granted without prejudice in any manner or degree, by reason of their being granted *ex parte*, to a reconsideration of the whole matter, &c.; that on the 28th of October, 1875, the petitioners filed a petition addressed to Surrogate HUTCHINGS, praying a final settlement of their accounts as executors of their said testatrix, and praying also for a revocation or confirmation of the letters issued *ex parte* to Lewis L. Delafield; that Maturin L. Delafield, the brother of Lewis, named in the petition, did not sign the same, though opportunity was offered him, but declined, wherefore petitioners did not request him to join in the present application; that on the filing of such petition proceedings were had, the usual citations issued, the accounts of the present petitioners and of Maturin L. Delafield in respect of the administration of their testator, Henry Delafield, upon the estate of the testatrix, were finally settled and allowed by Mr. VAN SCHAICK, who succeeded, as Surrogate, Mr. HUTCHINGS; that the question raised by the prior petition as to the validity of Lewis L. Delafield's title was not decided on such settlement, but was argued at length on both sides before Surrogate VAN SCHAICK, and was decided by him prior to his death.

FOSDICK *v.* DELAFIELD.

The petitioner prayed that such letters be revoked, and that the petitioners and Maturin L. Delafield, executors of Henry Delafield, be declared entitled to hold and administer the estate of the testatrix; and that said Lewis deliver to them the assets in his hands, etc.

The provision of the will of the testatrix appointing the executors thereof, was as follows: "Lastly, I hereby nominate my brothers, Joseph Delafield and Henry Delafield, executors of this my last will and testament; and in case both of my said brothers, herein lastly above named, shall depart this life prior to my decease, or in case they shall both decline to act as such executors, then I hereby nominate and appoint Lewis Delafield, son of my said brother, Joseph Delafield, and Edward Delafield, son of my said brother, Rufus K. Delafield, to be such executors of this my last will and testament."

It appeared that the brothers of the testatrix, named as executors, were much her seniors in age; that Henry Delafield qualified as executor and continued as such until his decease; that Joseph never qualified, and he was now deceased.

The question now presented for determination was whether the contingency contemplated by the testatrix in her will has happened, by which Lewis Delafield was appointed executor.

EDGAR S. VAN WINKLE, *for the petitioner.*

LEWIS L. DELAFIELD, *in opposition.*

THE SURROGATE.—By the literal terms of the will, the appointment of Lewis Delafield would appear to be dependent upon the decease of Joseph and Henry, occurring prior to the decease of the testatrix; whereas, the fact is that both of them survived her. I have examined with considerable interest and care the opinion of the late Surrogate upon this interesting question, and I should not presume to reconsider the question, were it

not for the suggestion, made in that opinion, that the application was *ex parte*, and, in substance, was not to be regarded as final, but subject to review, upon a proper application.* And I differ with the learned Surro-

---

*The proceeding before Surrogate HUTCHINGS was upon the petition of Lewis L. Delafield, Esq. The petition alleged, among other things, that the petitioner was advised that, under the circumstances set forth, the office and duties of executors in trust, by the tenor and intention of the will, devolved upon the petitioner and Edward Delafield, the other nephew named, and prayed for the construction of the will in that respect to the end that letters testamentary might be issued to them, or one of them, or that the proper letters might be issued to those entitled thereto. The following opinion was given upon the application, by Surrogate HUTCHINGS in Oct. 1875.

THE SURROGATE.—Upon the facts presented, the question arises, whether letters testamentary upon the will should issue to the two nephews of the testatrix named in the appointing clause, or to either of them; or whether it is a case for letters of administration with the will annexed.

(1) The petition impliedly raises the inquiry whether letters testamentary can issue to the two nephews " as executors according to the tenor," as that expression is understood in law. This depends upon the provisions of the whole will, other than the appointing clause, as that contains nothing pertinent to the inquiry.

An executor " according to the tenor" is defined by *Bouvier* as one "not directly appointed by the will an executor, but who is charged with the duties which appertain to one; as I appoint A. B. to discharge all lawful demands against my estate." (*Law Dict.* and cases cited). And according to *Williams on executors* (p. 203,) " the appointment of an executor may either be express or *constructive*, in which case he is verbally called executor *according to the tenor*; for, although no executor be expressly nominated in the will by the word executor, yet if, by any word or circumlocution, the testator recommend or commit to one or more the charge and office or the rights which appertain to an executor, it amounts to as much as the ordaining or constituting him or them to be executors;" and in a note, " the use of the word executor is not essential to the appointment of a person to execute the will. An executor may be appointed expressly or constructively, and designated by committing to his charge those *duties* which it is the *duty* of an executor to perform; by conferring those *rights* which belong to his office; or by any other language from which the *intention* of the testator to invest him with that character may be inferred."

But the appointment of executors by construction or implication is not favored, and in doubtful cases, administration *cum test. an.* must be resorted to (*Harnett v. Wandell*, 2 *Hun*, 552).

gate with some reluctance; and yet, upon the best consideration of the question I have been able to give, I am persuaded that he mistook the force of the doctrine that the intent of the testatrix should control

Applying what has been said to the present case, the two nephews of the testatrix are not named in any part of the will, other than the clause above, as being charged with any of the duties appertaining to an executor, or as being given or clothed with any of the rights belonging to the office of an executor, or referred to by name, in any language importing the testatrix's intention to invest them with that character; and consequently, they cannot, independently of the appointing clause, maintain their right to letters testamentary as " executors according to the tenor."

(2.) Letters testamentary can issue to them therefore, if at all, only on the ground of an express appointment, as executors, under that clause of the will above set forth.

Before discussing that question, some further citations from *Bouvier* may be of service. He refers to *substituted, instituted* and *conditional* executors, and defines the former to be one appointed, if another who has been appointed refuses to act; the next, to be one who is appointed by the testator without any condition, and who has the first right of acting when there are substituted executors. An executor may be appointed *conditionally,* and the condition may be precedent or subsequent. Such is the case when A is appointed in case B shall resign.

In this case, then, it would appear that the two brothers of the testatrix were, within the definition given, appointed instituted executors, and the two nephews were appointed *substituted* executors.

The former were no less *instituted* executors because the clause referred to the contingency of their death before the testatrix, for that contingency might happen in any case of any instituted appointment.

If the brothers had died before the testatrix, or, if surviving her, they had both declined to act, the appointment of the two nephews would have been as operative and effectual, as if they had been solely and unqualifiedly named as executors.

But one of the brothers qualified and acted as executor: and both brothers being now deceased, the inquiry under consideration is narrowed to whether the substitution of the nephews is or is not to be denied to éxtend and to apply to existing circumstances ; or whether the clause referred to is or is not to be held to have a restricted application, according to its first apparent or literal sense.

In *ex parte McDonnell* (2 *Bradf.*, 32), which was a case of *constructive* appointment, it is observed that, though the executor can only derive the right to his office from a testamentary appointment, yet it is well established that this appointment may be either express or constructive : but that this, " like all other questions of testamentary construction, is a question

the plain terms in which the appointment of the execu-
tors was made, and hence failed to give due effect to
the conditions in which the appointment of Lewis L.
Delafield was expressed.

of intention to be ascertained from an examination of all the provisions
of the will."

So here it would seem that the reason of the principle equally applies,
and that whether the petitioner is entitled to qualify as an executor, is a
question of intention on the part of the testatrix, to be ascertained from
an examination of the particular clause, in the light of the whole will, and
in view of the nature and purpose of that section of the will, and the
office and functions intended to be conferred by it on the persons therein
named. What was the necessity of any appointment? Did the testatrix
intend to confine the execution of the powers of such an appointment
to persons of her own selection, in whom she placed special trust and con-
fidence, so long as any of the trusts arising under the will remained in
force? Did she not intend to provide, as well as she could by substituted
appointments, for the execution of the trusts by persons of her own desig-
nation, and to guard against either embarrassment in law from a vacan-
cy or an administration of the continuing trusts by strangers? These are
questions which must now be determined, and courts should and will
give effect to what may be ascertained to be the intention of the testatrix
in these respects.

Imperfect phraseology will not be allowed to defeat an intention in
such a case, reasonably deduced from the instrument; and how rigorously
rules of construction shall be applied, or in what direction a doubt should
yield, may depend, it would seem, much upon the subject matter of the
clause in question : that is to say, for instance, a difference may be recog-
nized between provisions that affect rights of property, and those that
relate merely to the incumbent who is to execute a trust, or administer
the estate for the benefit of others, whose rights are in law unaffected, if
there only be a competent trustee.

Where a testator appoints an executor and provides *that in case of his
death* another should be constituted, on the death of the original executor
although he has proved the will, the executor so substituted may be ad-
mitted to office, if it appears to have been the testator's *intention* that the
substitution should take place on the death of the original executor,
whether happening in the testator's life-time or afterwards (*Williams on
Exec.* citing *in re Goods Lighton,* 1 *Hagg.,* 235).

In *Hartnet* v. *Wandell* (2 *Hun,* 552,) which was a case of delegated
appointment, which was not sustained, Justice Boardman says the ap-
pointment of an executor is a mark of personal confidence and trust, but
the executor should be named in the will, or appointed, or by *necessary
inference;* and referring to the statute as to whom letters testamentary

I am aware that the authorities are numerous, to the effect that the intent of a testator is to govern the construction of his will (*Jackson* v. *Staats*, 11 *Johns.*, 347 ; *Brandon* v. *Brandon*, *Ct. of Appeals*, *MSS.*, 1876). A

may issue, he recognizes the validity of the appointment of a person who can be identified by process of *construction* or *implication* applicable to the language of the will, by inquiring whether the Surrogate has power to issue letters to a person not named in the will and who cannot be so identified.

In this case, are not the nephews of the testatrix, within the meaning of the statute, executors expressly named in the will or appointed by necessary inference, in a manner consistent with the authority and opinion of the court in *Hartnett* v. *Wandell?*

Giving full weight and consideration to judicial decisions bearing on this case, and to the statute which provides to whom letters testamentary may issue, as the same is construed by our courts, it would seem to follow that the two nephews of the testatrix are entitled to qualify as executors, if it can be determined from the clause in question in connection with the whole will, that it was the intention of the testatrix, that they should act as executors upon the death of the two brothers, even though they or either of them survived the testatrix and qualified under the will; for if the clause is construed to express or imply that intention, then the nephews were *named* in the will as executors, within the meaning of the statute.

On that point, it is to be kept in view that there were express trusts of money for investment by the executors for the lives of several persons, and if the appointment of an executor as such for ordinary purposes of the possession of the estate, for the payment of debts, and thereupon to distribute the estate, is a mark of personal trust and confidence; the same may be said, *a fortiori*, where there are trusts such as this will creates.

It is fairly to be regarded that the testatrix, in appointing two of her own brothers executors, and, contingently her two nephews, desired that the trusts of her will should be executed by her own near relatives ; and the substituted appointment evinced her desire that, among her nephews, these particularly named should act as her executors. That *desire* has its expression in the will as her *intention* and *direction*.

If such was her wish, can any reason be believed or supposed to exist for intending that the two nephews should assume the trust, as a mark of her confidence, any less because the two brothers, or either of them qualifying, died while in the execution of the trust ?

There seems to be no rational explanation of a distinction in the mind or intention of the testatrix to make the choice of her nephews to depend on the occurrence of the deaths of the brothers before or after her-

court is bound to find out the intention of a testator, if it be possible so to do, however artificially the will may be expressed (1 *Stat. at Large*, 699, § 2). "But," says Mr. REDFIELD in his work on Surrogates, page 129, " this

self, or if surviving, on their or either of them qualifying and afterward dying before the trusts were fulfilled. And if this is so, such an intention cannot be regarded as *probable ;* so that the intention of such a distinction as would now deprive the nephews of the executorship may be considered as without reason and alike improbable and unnatural.

Yet it is true that courts must in some cases give effect to provisions that are obnoxious to criticisms of such a character. But under this will, there appears to be ground for a reasonable doubt of the meaning of the clause in question; and while courts are not required to strain after probate of a will, there may, and should properly, be an effort to reconcile a will in all its parts, and to give that meaning which is most in harmony with reason and natural probabilities, if the *intention* of the testator is in question; and it is now the province of the court to say whether the words "prior to my decease," in the nominating clause, in case both of the two brothers of the testatrix die, may not, in construction, be overlooked or discarded as superfluous, or as an imperfect attempt to define the time of decease, when unnecessary and incomplete, as not referring to the possible death while in the execution of the trust; or in other words, whether the event of death was not the contingency, and not the time it happened, or whether it was not an accidental and not an intended omission to refer to the decease of the brothers after qualifying as executors.

It seems to me that, in the mind of the testatrix, it was the *event* of the death, whether prior or subsequent to the decease of the testatrix, that she intended as the contingency which would render the appointment of her nephews effectual. This inference is founded on the clause referred to, taken in connection with the other contents of the will, and on the nature of the trusts and the relationship of the appointees, as before adverted to. (See *Parks* v. *Parks,* 9 *Paige,* 107.)

It is an established rule in the construction of wills, that where it is evident the testator has not expressed himself as he intended and supposed he had done, and the defect is produced by the omission of some word or words, and when it is certain, beyond reasonable doubt, what particular words were thus omitted, that may be supplied by intendment and the will read and construed as if those words had been written in the place or places where they were intended to have been. (*Redfield on Wills,* p. 453; and per Lord MANSFIELD in *Clements* v. *Parke,* 3 *Doug.,* 384.)

This case, it must be acknowledged, is not free from doubt, but in view of all the circumstances presented, there appears to be sufficient ground to permit the petitioner to qualify as executor and to receive letters : but

intention must be discovered from the words of the will, and not from extraneous circumstances, and the court must proceed upon the known principles and established rules, not on loose conjectural interpretations or by considering what a man may be imagined to do in the testator's circumstances." The intention of the testatrix is therefore to be gathered from the words of the will, free of conjecture, under the guidance of precedents and rules of law. (*Myers* v. *Eddy*, 47 *Barb.*, 263; *Terpening* v. *Skinner*, 30 *Id.*, 373, and cases cited.) Where the words of a will are plain, the intent always follows. The will cannot be added to, nor its omissions supplied. (*Cheeseman* v. *Wilt*, 1 *Yeates*, 411; *Cole* v. *Rawlinson*, 2 *Salk.*, 236.)

That the intention of the testatrix ought to govern, where it can be discovered, is a good rule; but wherever the will is plain, unequivocal and in technical law language, it is unnecessary to resort to that rule of construction (*Carr* v. *Jeannerette*, 2 *McCord*, 66). Constructions and interpretations of wills are not resorted to for the discovery of a testator's intention, when he has used none but plain, unequivocal expressions. (*Theall* v. *Theall*, 7 *La.* 220).

Although almost every rule of construction yields to the manifest intention of the testator, yet courts are not permitted to give an effect to his will, contrary to the plain and obvious import of the terms used by him, upon mere conjecture as to his intentions; and where he has made bequests to different children in terms which give them estates of different character in their

---

without prejudice in any manner or degree, by reason of the grant *ex parte* to a reconsideration of the whole matter, or to the rights of *cestuis que trust* or ultimate legatees of the capital of the trusts, if an application shall be made to revoke the letters, or their validity shall be otherwise questioned.

In like manner, as stated, Edward Delafield should be allowed to qualify and receive letters, if he shall so elect.

respective legacies, the bequest to each must take effect according to its legal import, although no reason appears for having made the distinction between his children. (*Monigoult* v. *Holmes*, 1 *Bailey S. C.*, 298 ) When a testator has used plain, explicit language, the court cannot reject the words upon the suspicion that he did not understand the import of the language used. (*Jenkins* v. *Van Schaack*, 3 *Paige*, 242 ; *Taylor* v. *Wendel*, 4 *Bradf.*, 324.) Where the meaning of the testator is apparent from the language of the will, its plain import can not be departed from, though it result in rendering the will invalid. (*Van Nostrand* v. *Moore*, 52 *N. Y.*, 12.)

From these numerous and well considered authorities, I deduce the obvious and reasonable principle, that where the testator has used plain and proper language to express his intention, and there are no ambiguities, nor any other provisions of the will contrary to, or inconsistent with, the language used, the court has no authority to look outside of the terms of the will for the expression of the intention of the testator. Much less should the court assume to conjecture what the testator intended, independent of the language, or base its construction of the instrument upon its notion of what ought to have been the intention of the testator.

In order to sustain the construction put upon this will by the late Surrogate, and by the counsel who is the alleged executor and is sought to be removed, the words " prior to my decease," must be ignored, while these words are entirely unambiguous, and express a fixed and plain condition which has not occurred in the case under consideration.

If the court were at liberty to say that there was no propriety in making such limitation or condition, and that the purpose of the testatrix was or should have been

to retain the administration of her estate in the family, and that it was entirely immaterial to her whether the appointed executors should die before or after her decease, then it would assume to make a will for the testatrix, instead of giving a construction to that already made by her.

The words in the will in question, " prior to my decease," are plainly significant of a condition ; and I can not perceive, after the most careful examination of the instrument, any provision therein which indicates a contrary intention, or any thing suggestive of a consideration by the testatrix, of the advanced age of the instituted executors, or of the youth of those substituted, or any thing which makes the appointment of her relatives a controlling element in the making of her testament.

Where the language used is consistent with the other provisions of the will, though it may leave contingencies unprovided for, and may seem to the court to be without sufficient reason, yet to attempt to adjust the language or interpolate or omit terms, according to its notion of what the testatrix should have done, would be to arrogate to itself the prerogative of testamentary disposition, which, under the law, belongs to the testatrix alone.

I might have contented myself with a disposition of this proceeding on the objection taken by the so-called executor, that the petitioners show no interest in this proceeding, and have no standing in court for the purpose of invoking a revocation of letters testamentary ; but the principal question has seemed to me of considerable interest and importance, and I have felt unwilling to decide the question upon a technicality, and leave unconsidered the grave question of law which should be settled for the purposes of future proceedings.

The petition alleges no interest in the petitioners,

except by virtue of their appointment and qualification as executors of the executor of the estate in question, and the alleged possession by them as such, of certain trust funds of this estate.

By sec. 17 of 2 *Stat. at L.* 73, it is provided that " no executor of an executor shall, as such, be authorized to administer on the estate of the first testator; but, on the death of the sole or surviving executor of any last will, letters of administration, with the will annexed, of the estate of the first testator left unadministered, shall be issued in the manner and with the authority thereafter provided." It is, therefore, entirely clear that the petitioners in this matter, by virtue of their office as executors of Henry Delafield, have no interest in this estate nor any control over its administration. By sec. 11 of 2 *Stat. at L.* 468, it is provided that an executor of an executor shall have no authority to commence or maintain any action or proceeding relating to the estate, effects or rights of the testator of the first executor, or to take any charge or control thereof as such executor. (*Theological Sem. of Auburn* v. *Cole*, 18 *Barb.*, 370 ; *Shook* v. *Shook*, 19 *Id.*, 653 ; *Campbell* v. *Browne*, 5 *Paige*, 36.)

The learned counsel for the petitioners, on the argument, suggested that the petitioners had a standing in court for the purposes of this proceeding, because they were possessed of certain property belonging to the estate of the testatrix, and that they had a right to know who was the proper representative of her estate in order that they might safely deliver the same. But it seems to me that a sufficient answer to that suggestion is the statute last cited.

It may be that on an application for the funds of the estate in their hands, they could raise the question as to the authority of the applicant to receive, but it is

clear to my mind that they have no such status as will enable them to invoke a revocation of the letters in his case; certainly no such interest is shown by their petition. The petition must therefore be dismissed, with costs to be paid personally by the petitioners, under the authority of *Shook* v. *Shook* (19, *Barb.*, 653).

Order accordingly.

---

NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—DECEMBER, 1876.