IN THE MATTER OF THE APPLICATION OF THE CITY OF ROCHESTER TO DRAW FROM HEMLOCK AND CANADICE LAKES WATER SUFFICIENT FOR ITS USE NOT EXCEEDING NINE MILLION GALLONS PER DAY.

WILLIAM HAMILTON, APPELLANT, *v.* GEORGE R. SMITH, AS EXECUTOR, ETC., RESPONDENT.

*When a testator will be held to have charged the payment of his debts upon his real estate.*

Hiram Smith died May 14, 1883, leaving a will by which he gave, after all his just and lawful debts were paid and discharged, to his wife one equal third of all his personal property, and the use or income of one-third of his real estate during her natural life, and the residue and remainder of his real and personal property to his son George R. Smith, one-half of the same to him, his heirs and assigns, absolutely, and the other half in trust for the benefit and maintenance of the testator's daughter, and conferred upon George, as executor or trustee, full power and authority to sell, transfer and convey, mortgage or lease any of the property, and to invest the same as to him might seem most judicious.

In November, 1883, the widow and daughter conveyed to George their interest in certain mill premises, and the water privileges appurtenant thereto owned by the testator, and released him from all their claims against him, as executor and trustee, he agreeing to pay all incumbrances on the real estate and the debts due by the testator at the time of his death. These debts exceeded $30,000, which his personal estate was not sufficient to pay, and of which indebtedness $23,000 remains unsecured and unpaid.

Thereafter, and in March, 1884, George assigned all his interest in the sum of money which might be awarded to him in these proceedings, instituted early in 1884 by the city of Rochester, to acquire the right to take water from the lakes which supplied the mill premises owned by Hiram Smith, to one Hamilton, to secure the payment of an amount then due to the latter, and for future advances to be made by him, and thereafter, and in December, 1884, George made to Hamilton a general assignment for the benefit of his creditors.

*Held,* that the testator intended to make his debts a charge upon his real estate.

That the three years bar of the statute relating to proceedings to apply the proceeds of real estate of a testator to the payment of his debts did not apply.

That the amount awarded by the commissioners should be paid to the executors of the estate of Hiram Smith and not to Hamilton.

APPEAL from an order of the Monroe Special Term, denying a motion to confirm the report of a referee, and directing the payment to George R. Smith, as executor, etc., of moneys arising from an award hereinafter mentioned.

Hiram Smith, up to the time of his death, owned mill premises and property, situate on Honeoye creek. And in 1878, he, with other mill-owners, commenced actions to restrain the city of Rochester from taking water from those lakes, of which such creek was the outlet, and his right to relief was finally established. (*Smith* v. *City of Rochester*, 92 N. Y., 463.) He died May 14, 1883, leaving his will, which was made April tenth, and admitted to probate and record May 19, 1883, by which he nominated his son, George R. Smith, executor, to whom letters were issued on the last mentioned day. The will contained the following provisions: "First. After all my just and lawful debts are paid and discharged, I give and bequeath unto my wife, Emily C. Smith, one equal one-third of all my personal property of which I may die seized, and the use or income from one-third of my real estate during the term of her natural life. Second. The residue and remainder of all my real and personal property of every name and nature I give, devise and bequeath unto my son, George R. Smith, in manner following, one equal one-half of the same to him, his heirs or assigns absolutely. The other equal one-half to him in trust for the benefit and maintenance of my daughter, Emma C. Smith." The will contains further provisions in respect to this trust, and gives to George, as executor or trustee, "full power and authority to sell, transfer and convey, mortgage or lease any of the property, and to invest the same, or the proceeds of the same, in such manner as to him may seem most judicious." And bequeaths to him "the right and privilege to continue the business now engaged in by me, or in which I may be engaged at the time of my death, in my name or otherwise, and for such time after my death as he may desire." The testator was engaged in the operation of the mills upon the premises before referred to. In November, 1883, Emily C. and Emma C. Smith, by deed, conveyed to George all their interest in such premises, water privileges, etc., appurtenant, and released him from all their claims against him as such executor and trustee. He accepted such conveyance, subject to all incumbrances on the premises, and assumed and agreed to pay all the incumbrances on certain other premises by him conveyed to them, and undertook to pay all the indebtedness against the estate by the testator.

Early in 1884, proceedings pursuant to statute providing for it

were instituted by the city of Rochester to acquire the right to take water from those lakes. Commissioners were appointed, and in June, 1885, filed their report which awarded to George R. Smith and Emily C. Smith as the owners of the mill premises $21,000. The report was confirmed.

In March, 1884, George assigned all his interest in the money to be awarded in the proceeding to William Hamilton to secure the payment of the amount then due, and which should by further advances become due to the latter from George. Further advances were made and George became indebted to Hamilton to the amount of $12,000 and upwards. And in December, 1884, George R. Smith made to Hamilton a general assignment for the benefit of his creditors. At the time of the death of testator his debts over and above the encumbrances on his real estate, amounted to upwards of $30,000, of which $23,000 unsecured indebtedness remains unpaid. And there is no personal property of the decedent applicable to the payment of any of them. The award is the only fund or property from which they can be paid except he left other real estate, but it is not chargeable with the debts until after this property is exhausted. It seems the mill premises at the time of the testator's death were and remain considerably encumbered. Adverse claims having been made to the amount so awarded to George and Emily Smith, a hearing was had before a referee who held (1) that there was no equitable conversion, by the will, of the mill property into personalty; (2) that it was not charged by the will with the testator's debts; (3) that the realty was not subjected by the will to a valid power of sale for the payment of debts; (4) that the title to the mill property passed to George Smith, first, by devise under the will, second, by the conveyance from his mother and sister. That his assignments to Hamilton of the fund to arise out of it were effectual to vest in the assignee the title to the fund when awarded, and therefore that he was entitled to the payment of the award.

Exceptions to the report having been filed on behalf of George Smith "individually and as executor," the court at Special Term sustained certain of the exceptions, and denied the motion to confirm the report, and directed that the bulk of the award should be paid to George Smith as executor, to be distributed to the creditors of the testator. Hamilton appeals from the order directing the payment to the executor of the fund produced by the award.

*Theodore Bacon*, for the appellant.

*J. A. Stull*, for the respondent.

BRADLEY, J.:

The contest is between Hamilton as such special and general assignee of George R. Smith, and the creditors of the estate represented by the executor of the will of Hiram Smith, deceased. There was no equitable conversion of the real estate into personalty produced by the provisions of the will. They do not indicate any intent on the part of the testator that the real estate should be sold and converted into money for the purposes of the execution of the trust, but the exercise of the power of sale given was designed to be dependent upon the discretion of the executor.

It is contended on the part of the appellant that the right to take the proceeding under the statute to produce and apply the proceeds of real estate in payment of the creditors of the estate of the testator was barred from and after the expiration of three years from the time letters testamentary were issued, and as such period terminated in May, 1886, the creditors can assert no right to such payment from the proceeds of real estate. (Code Civil Pro., § 2750; *Slocum* v. *English*, 2 Hun, 78; affirmed, 62 N. Y., 494; *Parkinson* v. *Jacobson*, 18 Hun, 353.) When there is no specific lien for the payment of debts, created by the terms of a will, the statutory lien continues for the three years from the time of granting letters, and unless within that time the proceeding provided for is taken, the power of the surrogate to direct sale of real estate and application of the proceeds ceases and a *bona fide* purchaser may take title relieved from the charge for the payment of debts. (*Hyde* v. *Tanner*, 1 Barb., 75; *White* v. *Kane*, 19 J. & S., 295.) But after the expiration of that time the creditor may bring his action against the heirs, devisees or legatees, to charge them as such or the property which came to them from the decedent. (Code Civil Pro., § 1844.) And a judgment recovered against the heir or devisee will be preferred as a lien upon the land so descended or devised to the defendant, to a judgment against him for his individual debt (Id., § 1852), although it will not affect the title of a purchaser in good faith and for value acquired before notice of the pendency of the action is filed or final judgment entered. (Id., § 1853; *Smith* v. *Soper*, 32

Hun, 46,)   It would seem in that view to follow that before it can be held that Hamilton had the unqualified title to the fund in question, it must be determined that he has the situation of a purchaser in good faith and for value, which is not found by the referee, and we are not able to determine upon the papers before us that he is such.   Nor are we prepared to adopt as establishing the construction of the statute the *dictum* in *Mead* v. *Jenkins* (95 N. Y., 31), to the effect that limitation of the time within which proceedings under the statute may be taken before the surrogate to sell, etc., the real estate of the decedent for the payment of debts extends beyond three years after letters are issued, and embraces that period of time after accounting is had.   But the view taken renders it unnecessary to further consider that question.   We think the testator intended by his will to make his debts a charge upon his real estate.   The reasons for this conclusion are found in the terms of the instrument aided by the other circumstances which are deemed to have furnished occasion for the purpose on his part to do so.   The amount of his debts evidently was large at the time he made his will, and at the time of his death, which was shortly after, his personal estate was greatly inadequate for the purpose.   It may be assumed that he appreciated the situation, and had in view the purpose to give and devise only what remained after deducting the amount requisite to pay them, as in the outset he by the will provided that *after the payment of his debts* his wife should take one-third of the personal and the use of one-third of the real property, and that the *residue and remainder* of his estate, real and personal, should then go as there directed.   He in this manner blended the disposition of his real and personal estate and seemingly made the entire devises and bequests subject to the payment of his debts and embracing only what remained after they were paid.   This is something more than a mere direction to pay them.   While the subject of charging legacies by wills upon the real estate of testators has produced much reported adjudication in this State, that in like manner of charging debts upon it has not, for the obvious reason that the latter is usually not essential for the protection of the rights of creditors.   In the case of legacies the search for the intention of the testator is quite liberally extended. (*Hoyt* v. *Hoyt*, 85 N. Y., 142 ; *Scott* v. *Stebbins*, 91 id., 605.)   In respect to debts like rules of construction may in a degree be appli-

cable, although the same force may not be given to circumstances indicating an intent that they shall be paid, because the creditors without the aid of any purpose on the part of the testator have the statutory remedy to require the appropriation of the real estate, if necessary, to their payment. In *Shallcross* v. *Finden* (3 Ves., 738) it was held that the use of the phrase "after payment of my debts" etc., in a will, means that until the testator's debts are paid he gives nothing; that everything he has shall be subject to his debts, and to give those words effect they must charge the real estate. And such seems to be the construction given to them by the English cases. In *Lupton* v. *Lupton* (2 Johns. Chy., 614–623) such rule is stated and that case cited with apparent approval, although the question was not necessarily there for consideration. And while in *Myers* v. *Eddy* (47 Barb., 270) the case of *Tracy* v. *Tracy* (15 Barb., 503) was declared unsound, the conclusion in *Harris* v. *Fly* (7 Paige, 421) that the real estate was charged with a legacy was approved because the residuary clause contained the words "after payment of all my debts, legacies," etc. In *Reynolds* v. *Reynolds* (16 N. Y., 257) a like rule of construction and effect of those words is stated in *Shallcross* v. *Finden*, cited by BOWEN, J. See *Stoddard* v. *Johnson* (13 Hun, 606) to the same effect. And in *Kinnier* v. *Rogers* (42 N. Y., 534) reference is made to the absence of any declaration in the will to the effect that the real estate is given after or subject to the payment of legacies, in support of the conclusion that they were not charged upon it. We think that these words in the will in question are entitled to no less significance by way of construction than they would have if they were in the residuary clause, but it is not intended to be understood that general words of like character in the opening paragraph of a will may in all cases necessarily have the effect to make debts of a testator a charge by it upon real estate. The great excess of debts over the personal estate of the testator is a circumstance entitled to some consideration in giving effect to the provision referred to. And while the power of sale is not in terms significant in that direction, it is consistent with the purpose that the debts should so far as necessary be a charge upon the realty, and to enable the executor to pay them from the proceeds of sale. (*Taylor* v. *Dodd*, 58 N. Y., 335; *Le Fevre* v. *Toole*, 84 id., 95.) Inasmuch as there has been no

accounting by the executor we should be inclined to direct that it be had preliminarily to the final direction that the fund in question go to him, if it did not appear that there is no personal property applicable to the payment of the unpaid debts, but since that fact distinctly appears, there is no occasion for any such provision.

The order should be affirmed.

BARKER and HAIGHT, JJ., concurred; SMITH, P. J., not sitting.

Order affirmed, without costs.