(18 Misc. Rep. 143.)

## In re THOMPSON'S ESTATE.

(Surrogate's Court, Otsego County.    September, 1896.)

WILLS—CONSTRUCTION—CHARGING DEBTS ON REAL ESTATE.

Testator bequeathed to his wife absolutely one-half of all his personal property, "after payment of * * * debts and funeral expenses." After disposing of portions of his real estate, he devised to his son "all the rest and residue of my real estate, wherever situated, and one-half of my personal property, after paying my just debts and funeral expenses." *Held*, that it was not testator's intention, in case of a deficiency of personal property, to charge the real estate devised to his son with all the debts and funeral expenses, but that all the real estate should bear its proportion.

Petition by the administrators with the will annexed of John T. Thompson, deceased, for leave to mortgage, lease, or sell the real estate of testator for the payment of his debts.    Granted.

M. E. Baldwin, for petitioners.
O. F. Lane, for Jay T. Thompson.
J. B. Conkling, for James M. Thompson.

ARNOLD, S.    On the 16th day of May, 1889, one John T. Thompson made a last will and testament.    The following is a copy of the first clause:

"First. I give, devise, and bequeath unto my beloved wife, Sally Thompson, the use of my homestead property, containing about seventy-five acres of land, with all the buildings thereon, and all my household furniture, during her natural life.    Also, I give to her absolutely one-half of all my personal property after the payment of my just debts and funeral expenses; the same to be in lieu of dower in my real estate and distribution of my personal estate under the statute."

The testator, by the second clause of his will, gives the use of certain real estate to his daughter in law, Helen C. Thompson, during her lifetime; the remainder to his grandson, Jay T. Thompson.    By the third and fourth clauses of his will, he devises certain real estate to his grandson, Jay T. Thompson.

The following is a copy of the fifth clause of said will:

"Fifth. I give, devise, and bequeath unto my son, James M. Thompson, all the rest and residue of my real estate, wherever situated, and one-half of my personal property, after paying my just debts and funeral expenses.    But in case my said son and his daughter, Ellen M. Thompson, should die without issue or lineal descendants, then, and in that case, the said property that is left at the decease of the survivor to go to my heirs at law."

Sally Thompson, the wife of John T. Thompson, died on the 7th day of March, 1892.    All the other persons named in said will are still living, and James M. Thompson has one child.    John T. Thomp-

son died December 26, 1892. His said last will and testament was duly admitted to probate in the surrogate's court of Otsego county on the 10th day of January, 1893. It now appears that the personal property of John T. Thompson, at the time of his death, was insufficient to pay his debts and funeral expenses. The administrators with the will annexed now petition for leave to mortgage, lease, or sell the real estate of decedent for the purpose of paying his debts. The real estate devised by the will has been appraised as follows: (1) The homestead devised by the first and sixth clauses at $6,000; (2) the devise to J. T. Thompson at $8,000; (3) the devise to James M. Thompson at $7,210; (4) the debts of the decedent amount to about $4,500. The special guardian for the infant, Jay T. Thompson, claims that, by the fifth clause of the will, the devise to James M. Thompson is expressly charged with the payment of this debt, and that the land thereby devised must be first disposed of, and he asks to have this proceeding dismissed. On the other hand, it is claimed by the administrators with the will annexed that there is no charge created by the will, and that all real estate owned by the decedent at the time of his death must bear equally the burden of his debts.

Under the general rule of the English and American law, the order of marshaling assets in the payment of debts is to apply the assets as follows: (1) The general personal estate; (2) assets especially devised for the payment of debts; (3) assets descended; (4) assets devised though generally charged with the payment of debts. Ger. Real Estate (4th Ed.) p. 368. By the provisions of the Code of Civil Procedure, where several distinct parcels are to be sold for the payment of debts, they must be sold in the following order: (1) Property which descended to the decedent's heirs, and has not been sold by them; (2) property so descended which has been sold by them; (3) property which has been devised, and has not been sold by the devisee; (4) property so devised which has been sold by the devisee. Code, § 2763. By the common-law, land descended or devised was not liable to simple contract debts of the ancestor or testator, nor was the heir bound even by a specialty, unless he were expressly named. This led the English courts to hold, upon very slight language, an intention on the part of the testator to charge his real estate with the payment of his debts. They held the real estate devised liable to simple contract debts, under a direction in the beginning of the will that debts and funeral expenses should be first paid. And it seems to have been the settled doctrine that in such case the debts constituted, by implication, a charge on the real estate, whether the direction be in the introduction or any other part of the will, and that all the decedent's debts be paid first. Williams v. Chitty, 3 Ves. 545; Shallcross v. Finden, Id. 738; Newman v. Johnson, 1 Vern. 45; Trott v. Vernon, 2 Vern. 708; Kidney v. Coussmaker, 1 Ves. Jr. 436; Brudenell v. Boughton, 2 Atk. 267. But the reason for the English rule has never existed in this state. Since 1786 a law has been on our statute books making the heirs of an intestate and the heirs and devisees of a testator respectively liable for the debts of the decedent arising by simple contract or by

specialty, to the extent of the estate, interest, and right in the real property which descended to them from, and was effectually devised to them by, the decedent. 1 Rev. Laws, p. 316, § 1; 2 Rev. St. (1st Ed.) p. 452, §§ 32, 33; Code Civ. Proc. § 1843.

There is another distinction to be noted in the cases. Most cases cited by counsel for contestants are cases in which an action has been brought to charge real estate with the payment of a legacy. As is said by Judge Folger in Hoyt v. Hoyt, 85 N. Y. 146: "It is but to utter common language to say that legacies of money are to be paid from personal property, and that, if the personal estate is insufficient therefor, the legacies are to abate, unless the real estate is charged with the payment of them." This rule of law has led the courts in many cases to hold that the language of a testator created a charge on his real estate for the payment of legacies, where the courts would not hold that the same language created a charge on the real estate for the payment of his debts. In the case of legacies, courts will assume that no honest man will make a bequest unless he intends that it shall be paid; and, to prevent a legacy from abating, the courts have diligently searched for language in the will indicating an intention on the part of the testator to charge the payment of the same upon his real estate. In some cases they have held upon very slight language that a charge upon the real estate had been created. But no reason exists in this state for such a rule of construction as to the payment of debts. The courts have established the rule that the real estate of the decedent is never to be held to be charged with the payment of debts, unless the intention of the testator to so charge it is expressly declared, or can be fairly and satisfactorily inferred from the language and disposition of the will. Lupton v. Lupton, 2 Johns. Ch. 614.

In Re City of Rochester, 110 N. Y. 166, 17 N. E. 742, Judge Gray, in writing the opinion of the court, says:

"It is not sufficient that debts or legacies are directed to be paid. That alone does not create the charge, but they must be directed to be first or previously paid, or the devise declared to be made after they are paid. Courts should be slow to construe an intention to charge the payment upon the devise of real estate from the use in a will of formal words, or the presence of commonly employed phrases."

Reynolds v. Reynolds' Ex'rs, 16 N. Y. 257; Morris v. Sickly, 133 N. Y. 456, 31 N. E. 332; Brill v. Wright, 112 N. Y. 129, 19 N. E. 628; Cunningham v. Parker, 146 N. Y. 29, 40 N. E. 635; In re Duffy's Estate (Sup.) 18 N. Y. Supp. 724; Myers v. Eddy, 47 Barb. 263; Shulters v. Johnson, 38 Barb. 80; Hauselt v. Patterson, 124 N. Y. 349, 26 N. E. 937; 3 Pom. Eq. Jur. §§ 1244, 1245; In re Bingham, 127 N. Y. 296, 27 N. E. 1055.

The language employed by the testator in the fifth clause of the will, taken alone, might be sufficient to sustain a holding that the property devised by that clause was charged with the payment of decedent's debts. Buckley v. Buckley, 11 Barb. 43. But it is a well-settled rule of construction that all of the language employed by a testator must be considered together, in ascertaining his intention. The fifth clause of the will cannot be read alone; it must be read in

connection with the first clause. Reading these two clauses together, it seems to me too evident to admit of contradiction that the testator believed, at the time that he made this will, that his personal property was amply sufficient to pay all his debts and funeral expenses; and it seems to me equally plain that the decedent's scheme was that his debts and funeral expenses should be paid from his personal property; that, after his debts and funeral expenses had been fully paid, he desired to divide the balance of his personal property equally between his wife and his son, James M. Thompson. By the first clause of his will, the testator gives to his wife the use of the homestead property during her lifetime. Then he directs:

"Also, I give to her absolutely one-half of all my personal property, after the payment of my just debts and funeral expenses; the same to be in lieu of dower in my real estate and distribution of my personal estate, under the statute."

No evidence has been given as to the amount of personal property owned by decedent at the time of making the will, or as to the amount of his indebtedness at that time; but it must be presumed by the court that the testator was honest in the expressions he used in his will, and that he meant them to have some meaning. The widow had a valuable right of dower, but, under the will, she is to accept a life use in the homestead and one-half of his personal property, after the payment of his debts and funeral expenses, in lieu of dower and her distributive share in his personal estate. It could not be argued that the language in the first clause created any charge on the real estate devised to the widow during her lifetime. I think that the testator contemplated exactly the same condition and result by the use of similar language in the fifth clause; that he had in mind simply that his personal property should be applied to the payment of his debts and funeral expenses, and that the balance should be equally divided between his wife and this son. If it were not for the conditions created by the first clause of this will, I should hold that the language "after paying my just debts and funeral expenses," in the fifth clause, related to both real estate and personal property, and that it created a charge upon said real estate. 2 Jarm. Wills (6th Ed.) 544; Id., Eng. paging 1407. But, reading this language in connection with the first clause, I think that that language simply referred to the personal property, and that it created no charge upon the real estate devised in the fifth clause, and that all the real estate left by decedent must bear its proportion of his debts.

The objections filed by contestants are hereby dismissed, and the decree asked for by the petitioner may be entered.